We will proceed with the next case on the docket this morning. It is Poet Theatricals v. Celebrity Cruises. John Carey is here for Poet. Tim Crutchfield is here for Celebrity. And Mr. Carey, you may begin. Thank you, Your Honor, and good morning, and may it please the Court, John Carey for the appellant, Celebrity Cruises, reserved five minutes for rebuttal. I'd like to begin with a pre-argument order regarding complete preemption under the Copyright Act. This issue is controlled by the Supreme Court's decision in Beneficial National Bank v. Anderson, a 2003 case, which set forth the doctrinal framework that federal courts are bound to apply in assessing whether a federal statute affects complete preemption and thereby allows for complete preemption. The test set forth by the Supreme Court in the Anderson case, which I'd point out, incidentally, had a seven-justice majority. The test set forth in the Anderson case, which was looking at whether the National Bank Act, whether state law usury claims against a nationally chartered bank arose under federal law. The court looked at the National Bank Act and set forth the following test. It held that whether the federal statute, in assessing whether the federal statute affects complete preemption or not, the test is whether the federal statute at issue provides the exclusive cause of action for the claim asserted in the case and also sets forth procedures and remedies governing that cause of action. In that particular case, the Supreme Court held that the proper inquiry was whether Congress intended the National Bank Act to be exclusive, not whether Congress intended that the cause of action necessarily be removable. The question was whether Congress intended the cause of action set forth in the National Bank Act for usury was intended to be exclusive or not. The court stated in the opinion, does the National Bank Act provide the exclusive cause of action for usury claims against national banks? If so, then the cause of action necessarily arises under federal law in the case's removal. So applying that doctrinal framework here to the Copyright Act, we have to start with Section 301 of the Copyright Act. This is Title 17, Section 301. This statute is even a better candidate for complete preemption, I would submit, than the National Bank Act was. Section 301 says, quote, all legal or equitable rights, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as set for specified in Section 106 and that come within the subject matter of copyright as specified in Sections 102 and 103, are governed exclusively by this title. I repeat, all those equitable rights are governed exclusively by this title. Mr. Kerry, can you have complete preemption without copyright-protected materials? Yes, you can, you can, Your Honor. Is there a case for that proposition? Oh, there are many of the cases that are already cited in the brief say that, and let me explain. Because these are not copyright-protected materials that we're dealing with in this case, are they? Well, that's actually, there's not a clear factual answer to that. The plaintiff has indicated in the district court filings that it did not attempt to register copyrights for the of the copyright Section 301 was to provide national uniformity with respect to copyrights. And national uniformity means saying when something, saying when a work can and should be protected, and it also means saying when a claim for infringement doesn't constitute a violation. So uniformity protects copyright owners and accused infringers. But how can the Copyright Act apply? Because if you look at then Section 106, which talks about, which is referenced in 301, it's the owner of the copyright has exclusive rights, but you have to have a copyright, do you not? No, Your Honor, you're not. None of the cases suggest that whatsoever. I mean, this is really not controversial at all. The test for 301 is two parts, right? It's whether the right asserted is within the general scope of copyright. And that has to do with, okay, and then that looks at the exclusive rights set forth in 106. And those are the rights to display a work, to reproduce a work, to perform a work, etc. So if the claim is seeking to, if the claim alleges a violation, that is like display, reproduction, or performance, then it's equivalent to those rights set forth in 106. That's one part of the test. The other part of the test is whether the work comes within the subject matter of copyright, as specified by 102 and 103. And that means, is it the type of thing that Congress in Sections 102 and 103 of the Copyright Act would actually be copyrighted? Okay, that is crystal clear in this case law. Because, and so if the rights could be eligible for copyright protection, whether or not they actually are, they come within this provision 301. And the whole point of national uniformity would be completely frustrated if a plaintiff could avoid the national uniformity sought by the statute by simply deciding not to register as copyright and avoiding the application of this federal statute. That would turn the statute on its head. And no court has suggested that. And in fact, many of the cases which apply copyright preemption that are cited in the briefs by many other circuits and courts throughout the country, many other, these cases, they find the claim preempted, and they normally dismiss the claim because the plaintiff didn't satisfy some other requirement for a copyright action to proceed. And by the way, this, you know, the fact that a copyright doesn't have to be registered in order for a claim to be preempted, that's not even an argument that Poets made in this case. It wasn't made below, and it isn't made in this appeal. So that's just not an issue whatsoever. So proceeding on, applying the Anderson test here to figure out, you know, to confirm that we apply the Anderson test, and we simply ask, does the Copyright Act provide an exclusive cause of action for the claim asserted? And if you look at 301, which I just read, it says that the assertion of rights that come within the scope of copyright, and there are equivalent to a 106 are governed exclusively by this title. So nothing, it's clear as day that 301 says that the cause of action is exclusively federal in nature, when 301 says that such rights are governed exclusively by this title. And you couple that with another statute, 28 U.S.C. 1338, which provides for exclusive federal court jurisdiction over copyright actions, and deprives the state's hearing copyright actions. It's even more clear here that the copyright statute provides an exclusive cause of action for claims that fall within its scope. Judge St. Cyr of the First Circuit seemed to suggest that the 301 right is narrower than the National Bank Act in its use of the equivalent to language as opposed to the related to language in the National Bank Act. Why is that not a good reading and one that we should adopt, especially where we've said and we've been instructed that complete preemption is really a narrow, narrow exception to the well-planned complaint rule? Well, Judge St. Cyr wrote in dissent, and in that dissent, he made comments about complete preemption under the Copyright Act. The majority opinion in that case didn't mention copyright preemption at all, because the issue wasn't copyright preemption. There was diversity jurisdiction in that case. There's no doubt that it's dicta and it's an dissenting opinion. But as a court who hasn't decided the issue, I'm looking to see those learned judges who've gone through this. And he seems to make a good point. And I'm asking you about that good point. Well, here's why I don't think it's a good point, Judge. Judge Cyr, in that First Circuit dissent of his, compared the Copyright Act to some other statutes. I think you said the National Bank Act. And he made some comments about some types of claims that are related to copyright that wouldn't fall within the scope of 301. And so he takes a view that there are some copyright-related claims that wouldn't be preempted under 301. And he basically concludes that Congress didn't preempt the entire field of every possible kind of claim involving a copyright. And here's where he erred, I believe. The issue under Anderson isn't whether the field occupies a field so extensively that it's deemed to constitute what the courts call field preemption. Field preemption doesn't come into the Anderson test. The Anderson test is about whether the claim asserted, whether there's a federal cause of action for the claim asserted. So the preemption test, the complete preemption test set forth in Anderson, which this court is bound to apply, is a claim by claim kind of preemption. It's not a field preemption test. That's why Judge Sear looked at it wrong. He was thinking in terms of, you know, does copyright affect field preemption? You can have state law claim, he said, you can have state law claims where there are disputes over copyright ownership, for example, and those wouldn't be protected under the Copyright Act, or those wouldn't be preempted under the Copyright Act. Well, he's right about that. You can have two people that dispute who owns something, and that would be governed potentially by be governed by state law. But that's not what we're talking about. 301 has a test, and 301 preempts claims where the rights asserted are equivalent to 106 rights. So in the example that Judge Sear gave, where you've got two competing authors contesting ownership of a copyright, that claim doesn't implicate a 601 exclusive right. It doesn't even satisfy one of the two-pronged tests of Section 301. So it would never even, it doesn't even affect that kind of claim, a dispute over ownership. That's not even ordinarily preempted, much less completely preempted. So it's really the example, so he was looking at that example, and it's really an irrelevant example. Because what is preempted by 301 are claims. And what claims? Claims that involve material that comes within the scope of copyright, that could be protected by copyright, and claims that are equivalent to a right specified in Section 106, which are the exclusive rights to display, reproduction, performance, et cetera. So look at the complaint here, all right? The complaint here, and if you look at- Mr. Ruff, you're way over your time, and you've reserved some time for rebuttal. Okay, Judge. All right, so let's hear from Mr. Crutchfield. Well, good morning. Tim Crutchfield on behalf of Poet Theatricals. The complete preemption doctrine definitely should not apply to copyright. There's one very clear reason why it doesn't reach the same scope as the Labor Management Relations Act, ERISA, or the National Banking Act's regulations regarding usury. All those acts regulate and limit terms that private parties can agree to contractually. And your copyright does not any limitation whatsoever as to the rights of private parties to agree to whatever terms they want to make in a private agreement. Celebrity even acknowledges that in their reply brief. The parties are free to contract as they see fit. And in the Anderson case, it noted, it quoted the Franchise Tax Board case, referring back to AFCO, and said that the preemptive force found for Labor Management Act was so powerful to displace entirely, and it's entirely, any state cause of action for violation of contracts between an employer and a labor organization. So expressly related to a situation where you couldn't even have a breach of contract action outside the scope of that. And the same goes to any action with the labor, with the National Bank Act regarding usury. Any breach of, any action alleging you are charging a usurious rate is governed by that federal law. It doesn't matter what private agreement you might have, no private agreement can get around that. Counsel, does that tell us that the case law that says that a breach of contract action outside of copyright isn't really outside of copyright? In other words, in other words, should that maybe be preempted because it is, as the language of 301 says, I just want to use the exact language, I'm sorry. Equivalent to a right or within the general scope of copyright? No, Your Honor, it's completely outside the scope of that. And as the, we're having acknowledged in numerous cases, including this out courts, Lipschitz case in 2011, private agreements are exception because parties may freely agree to an arrangement that is more or less generous than the Copyright Act would afford. Also, both parties cite the Pro-CD case from the Seventh Circuit, where it notes that a copyright is a right against the world. Contracts, by contrast, generally affect only their parties, and strangers may do as they please. So contracts do not create exclusive rights. So there's a distinction between, and under the statute, it especially refers to that it doesn't affect out claims, state claims outside of the copyright and contract rights are outside of that. And that's been, why can't there be complete preemption then for those things that are not the for everything outside of contracts that give something other than exclusive rights within the scope of copyright? Well, a couple of things. Anderson is, like I said, should basically be viewed as the outside limit of when complete preemption is applied. So anything that makes it less applicable than an Anderson should mean where it's not extended that far. But with the Copyright Act, in addition, we have, Congress has expressly expressed what their intent is with how far it goes in with copyright, because in 2011, they amended the removal statute for copyright cases and patent cases, and said that now instead of just being removable based upon only the actual initial complaint, it can be removed based upon any claim for relief. Now, Congress at this time was fully aware of this whole line of cases on complete preemption. The difference between complete preemption and the well-paid complaint rule can really boil down to the fact that a preemption defense is not grounds for removal, unless complete preemption applies. When Congress passed the law in 2011, they did extend it so that a counterclaim could raise a claim that would justify removal. But they did not say that a defense could, it has to be a claim for relief. So we don't have to guess or read the tea leaves to find out what congressional intent was. They expressly told us in 2011, after law, complete preemption was fully established, and to an extent it has been by the Supreme Court. And so it can't go and extend it beyond that. And so if we have the touchstone, it's still the congressional intent. The Congress has always, Supreme Court's always recognized that in that versus Taylor. They said, it's the removal of jurisdiction. They have to look at the intent of Congress. Anderson had a footnote where they talked about the proper inquiry focuses on whether Congress intended the cause of action to be exclusive rather than on whether Congress intended that the cause of action be removable. But the reason that footnote was in there was because the National Bank Act was passed in 1864, 11 years before there was a statute to provide for removable, whether the case was removable. So in that case, you couldn't determine what Congress intent was regarding removability, but essentially that's what we're all going. The actual issue is, is it removable Congress, especially stay their intent in our case. Didn't Supreme Court specifically say that it's not the intent of removability that matters. It's the intent to make, it's the intent to give complete preemption in a particular area. That's what they say. And that's the very reason you've just said that some of these statutes predate the concept of removability, right? Congress has found complete preemption. But that's the context of where they were making that statement. I mean, that's what I was reading from. And that's in footnote five, explain that because of the, the time involved in this case, we have the copyright of 1976, when the Copyright Act was completely rewritten and revised after AAFCO was done. And keep in mind, in the Metropolitan Life versus Taylor, they had a situation where the court was reluctant to extend complete preemption to that situation involving ERISA except for the fact that ERISA, which was passed in 1974, tracked the language from the AAFCO decision from the Labor Management Act. In the legislative history, right, Mr. Crutchfield? And the legislative history expressly said we are- The legislative history is not all that helpful for you here if you take a look at it, is it? Well, there's nothing in there saying that it's falling the same level as with the Labor Management Act. Well, it didn't say that, but it all but said, if you look at the legislative history, I've looked through it, specifically the House report. And there's a lot of statements which seems to suggest that we want this to be the exclusive remedy absent any state and to overcome or be contrary to any state court remedies. Well, but they also have that it expressly does not apply to the statutes to- Sorry to pull the language here. Any cause of action, activities violating legal or equitable rights, they're not the equivalent of any exclusive rights when there's a general scope of the copyright. And the courts have basically uniformly held that contract rights are outside that. I don't disagree with you there, but looking at the legislature, I'll read an example. This is House Report No. 1476, which was the House report of the most recent sort of big reform of the Copyright Act. Quote, the intention of Section 301 is to preempt and abolish any rights under the common law or statutes of the state that are equivalent to copyright. Copyright, and that's the reason the courts have historically made this distinction between contract rights and equivalent copyright. Copyright is against the world. Some stranger comes and uses it. It's under copyright. Contract rights- I don't disagree with you, but this gets to really the second point, which is in your brief, you do a yeoman's job of trying to, it seems to me, recharacterize count two as arising under contract in order to fall within what you're talking about right now, except that if you look at what's actually pled, it seems to me that we're talking about extra or post-contract conduct. It specifically says that there was a license given during the course of the contract. They were supposed to turn over the copyright. After the contract ended, they continue to use this very thing. In other words, the contract rights that you're talking about have expired. They're done. They're terminated, and they continue to use what otherwise would be protected work, the equivalent to copyrighted work. How is that not exactly within what we're talking about? Because our rights- say the copyright law did not exist. It didn't establish any rights for us whatsoever. Our cause of action stands entirely on the fact that that contract created rights and recognized rights and said that we will return this material to you, and it's the correct obligation to do so. Under the unjust enrichment law, when we have that expectation of payment that's recognized from the contract, then that's what gives rise to our cause of action. That's artfully said right here, Mr. Crutchfield, but that's not what's in the complaint. What's in the complaint is not you didn't turn it over and you're using it. It's that you had a license to intellectual property for a period of time up until 2016. After that, you used the videos and the pictures in promotional material to sell the cruises, contrary to our rights to that very thing. Well, Your Honor, it says that in paragraph, I think, 22 and 23 of the complaint, it has expressly- No, it lists the contract. I'm looking at paragraph 23, but then look at paragraph 24. It says that you have- Counsel, following termination of the- Sorry. Celebrity continued to use the video recordings and still photographs, dot, dot, dot, following termination of the agreements between POET and Celebrity. Then go to count two, starting paragraph 32 on page seven. Following the expiration of the agreements, dot, dot, dot, Celebrity continued to use on its websites without licensing permitting to use the promotional materials. Right. And that's what- I'm sorry. I didn't mean to interrupt. No, no. The allegations are clearly that the right that they had ended in 2016, the agreement terminated, and they continue to use those materials despite the fact they no longer had a license to them. That's the tenor of count two, is it not? Well, it's that there was a- Unlike where copyright, we have to establish ownership and an obligation to pay under that. We have established- These two parties, just these two parties, that's the reason the court threw out all the other counts against the other defendants. But these two parties expressly had agreed that they would only be used by Celebrity under the terms of this agreement, that the material would be returned at the end of the agreement, and that if they were to use it beyond the scope of the agreement, they expressly said that they would have to then buy a license. That's all done under the contract. So yes, contract expired, but these rights arise under the parties- Then why didn't you sue under breach of contract? In other words, counsel, what you didn't do is allege that they were required to turn everything over and they breached that obligation. That continued past the expiration date of the contract, but that's not what's alleged. We've said in case after case, so is the Supreme Court, that the plaintiff is the master of his or her termination, there was continued use despite the fact that the license had expired. Isn't that the equivalent of the legal rights to copyright? Well, it would go to- No, it's still under the contract, arising under the contract, whether we plot it as a breach of contract or unjust enrichment. It's really a state court question whether if it goes back on remand and the court were to say, well, this would be better implied as a breach of contract or a contract implied in fact. Either way, it's still the cause of action. It's still based upon the same allegations. It's still the same facts and circumstances. And that would be a question- But Mr. Crutchfield, in Florida law, they're mutually exclusive. In other words, you can plead them in the alternative, but as a remedy, you cannot get a remedy for unjust enrichment in Florida and also get a remedy for breach of contract. They are mutually exclusive. Correct, Your Honor. And on remand, if that was the situation, then it could be amended to make it where they are pled. I agree, but they're not. All we have is the... You picked your exclusivity. You picked a non-contract remedy. And I'm having a hard time understanding how it doesn't fall well within 301 as the equivalent of copyright. Because it's equivalent of the circumstances that still arise out of that contract that existed between these two parties. And the court... There are examples that are given where the court looks into the basis for the complaint and the pleadings and the situation. And that remains the same. However, you plead it as untouched enrichment or as a quasi-contract or express contract, it's all the same basis for this allegation in our complaint. Across the board, our complaint is clearly based upon the obligations and- Counsel, in Florida, unjust enrichment is exclusive of contract rights. In other words, it doesn't arise from contract. It is exclusive of contract rights. You have something of mine and I am entitled to compensation for your use of that. There's a reason this case is distinguishable from just a generic unjust enrichment is because the expectation of payment arises from the prior contract. Sometimes you can have unjust enrichment- How's that true? I'm sorry, but that- No, no, I'm sorry. That's why I'm sort of very perplexed by the fact that you didn't plead the breach of contract because an unjust enrichment, normally in Florida, you see that because there is no contractual obligation and a benefit is conferred. But here you actually had an express contract. So I'm sort of perplexed by why you're pursuing it this way. Either way, I guess to be a state court question is to the correct cause of action under the facts that the claim is pled. What the claim is, there's no dispute anywhere that the basis for the claim is the fact that they were given right to use it for a limited period of time and they agreed that we owned it. They agreed they had to return it and they agreed that if they used it beyond the scope, we had to pay us for it. All that's in the contract and they were unjustly enriched or if you want to say breach the contract, either way, whichever one would go, but that's a state court question because they continue to use it without paying us and the expectation of payment was established for that contract. So I think that's where it comes into why that would be. And it's an issue for the state court to decide on remand as to whether it's the appropriate cause of action or if it's excluded. And also think the, and it could be amended on remand too, if there was a reason to plead the two and the alternative, because the Florida Supreme Court in 2017 clarified the law that on the relation back, that if it's under the same facts and circumstances, even if it's a new cause of action, it relates back to the same, the initial filing. So all that can be addressed by the state court. These are all state court issues, but the fact is that a well-recognized line of cases that, where they say that copyright deals with relationships, it's against the world, contracts only affect the parties to the contract. These two parties and these two parties along, I think the trial court was correct in dismissing the other counts because those other parties were not party to this agreement and this agreement established expectation of payment and they not making that payment while continuing to use the property conveyed under that, that there was just a return, that that would be something that they're obligated to pay for either under unjust enrichment or if it was under contract, either way is still outside the scope of copyright. Thank you, Mr. Crutchfield. Mr. Carey, you've reserved some time for rebuttal. Thank you, your honor. A couple of points. First, let me address the issue of the unpledged breach of contract claim. There is no breach of contract claim as Judge Luck and Judge Legault aptly pointed out. In fact, Poet explains why there isn't in their own motion to remand at page eight. They state right there that breach of contract, they, in their words, quote, simply wasn't available to them because of the expiration of the contract. And they go on to say, that's why we've brought a claim for unjust enrichment, which they then themselves right there in that same page, characterize as an implied in law based claim. Okay. So they've, they've been very fuzzy with trying to say there is a breach of contract claim here, but they've disavowed it unequivocally in their own filings. And it's of any contract express or implied. And that's not what the claim is. The claim is a unjust enrichment claim, which is an implied in law claim, which is a claim not based upon agreements of the parties or promises between parties, but where courts come in and impose obligations based upon the circumstances. And so they've admitted that a contract claim isn't available to them and that that's not what they brought. So that, that dog won't hunt on. I'd like to go back and supplement and clarify my answer to judge Wilson's original question. Because I think it's important to understand this is about whether, you know, can, can you have copyright preemption in the absence of a copyright? Let's be clear what we're talking about here. Copyright protection is created upon the creation of the work. Okay. So the federal copyright law attaches when a work is created by its author, that that's when the law kicks in. And so here poets asserted artistic works, their photographs and videos, and by the way, they call them artistic works in the complaint. And that, and that license agreement that's expired was a copyright license agreement. Says that right there in paragraph 23, copyright law attached to their artistic works when they created them without regard to whether they ultimately registered the registration is a procedural formality. I'm sorry. Registration is like registering a deed. It just gives notice to other parties into the world. It doesn't, it doesn't create the right. The right is created when the artistic work is created. Right. That, that is a good analogy judge. And you're correct that the, that copyright rights arise when, when the work is created, you know, registration is a procedural formality. It's something that you procedurally have to do to maintain an infringement action. It also creates presumptions too, correct? It creates presumptions of ownership, et cetera, and, and legitimate and validity of the copyright. It's not a requirement for, for jurisdiction, by the way. Supreme court clarified that a few years ago in 2010, actually. So you don't need a registration for a court district, a federal court to have jurisdiction over a case, but in order to state a claim as a procedural matter, you have to get the registration. And in fourth estate, the Supreme court, by the way, noticed how easy it is to get a registration. It only takes a few months. You submit a form, pay a fee and deposit the work. Speaking of presumption, in order to say, would we, that the Copyright Act overcomes the presumption against complete preemption. Isn't there a presumption that we have to take into consideration? I, I don't think I've, I've, judge, I don't think I've seen it anywhere expressed that there's a presumption against it. I mean, it's, it's, you know, you, the, the Anderson decision, which is the framework in this area, doesn't say there's a presumption against it. I mean, we just look at the statute and see whether this statute, the Copyright Act provides an exclusive cause of action for the types of claims that's asserted in the type of claim that's asserted here. And here, let's, I wanted to say this before, and I be remiss if I didn't, the claim here is an unadulterated copying claim. The allegations of the complaint are that celebrity displayed their works without authorization, and after the expiration of a contract, but the, but the, it's a core copying claim to say that the violation is the display of our, of our photos and videos. That is a straight up unadulterated copying claim. It clearly falls within the scope of the enumerated rights in section 106, which, which explicitly are display and reproduction. And it's undisputed that the come within the scope of copyright under, under sections 102 and 103, they're photographs and videos, which are explicitly the types of things that are the subject matter of copyright. So, you know, the only argument against application of preemption was this idea that we've got a breach of contract claim, and that takes it out of preemption. I'll submit, I'll, I'll, and we've acknowledged in our brief that that breach of contract claims are not preempted. They have an extra element of the existence of the breach of the contract that a copyright claim doesn't, but there's no copyright claim here. And this is where the district court went astray. It acted as though the expired agreement, you know, continued on, but as POET itself, and that was wrong. That was simply is a non sequitur to say that, that, that, that celebrity violated a non-existent contract. So, so POET has admitted there's no contract claim here, and that's why they pled and implied in law claim. And if you look at Forest Park and all the other authorities, all the other authorities are in unanimous agreement that implied in law type of claims are preempted by this copyright act. There's no contrary authority. The only thing that rely on that they rely on are some district court decisions, which by the way, are unreported. And in every single one of those, the actual holding was based upon a finding that there was an actual agreement, which is not the case here. Thank you, Mr. Carey. Thank you. Appreciate your arguments. And that completes our docket for this morning. And the court will be in recess until nine o'clock tomorrow morning.